NEW YORK LIFE INSURANCE COMPANY *v.* RHEA B. CHRISTIE *et al.*

(No. 8002)

Submitted November 22, 1934.   Decided December 11, 1934.

*Charles C. Scott* and *Charles W. Louchery,* for appellant.

*Strother & McDonald,* for appellee New York Life Ins. Co.

*A. M. Cantrall,* for appellee Robert Milton Christie.

WOODS, PRESIDENT:

Rhea B. Christie complains of an adverse decree pronounced in an interpleader suit, whereby she and her infant son were required to come in and assert their respective claims to the proceeds of three certain insurance policies.

Everett M. Christie, in 1920, took out with the New York Life Insurance Company three policies in the face amounts of $5,000, $5,000 and $15,000, respectively, all being made payable, upon receipt of due proof of death, "to the executors, administrators or assigns of the in-

sured or to the duly designated beneficiary." Each, with the exception of amounts, contained identical provisions, including the following:

> "CHANGE OF BENEFICIARY.—The Insured may at any time, and from time to time, change the beneficiary, provided this policy is not then assigned. Every change of beneficiary must be made by written notice to the Company at its Home Office accompanied by the Policy for indorsement of the change thereon by the Company, and unless so indorsed the change shall not take effect. After such indorsement the change shall relate back to and take effect as of the date the Insured signed said written notice of change whether the Insured be living at the time of such indorsement or not. In the event of the death of any beneficiary before the Insured the interest of such beneficiary shall vest in the Insured."

On October 31, 1929, the beneficiary in each policy was changed to the son, Robert Milton Christie; on September 3, 1931, to insured's "executor, administrators or assigns"; and on September 4, 1931, to the New York Life Insurance Company, as trustee, the entire $25,000 to be disposed of in accordance with the provisions of a certain trust agreement, which was attached to the first policy.

On August 17, 1932, Mr. Matheny, the agent who sold the insurance, was called over the 'phone and told that Mr. Christie wished to see him at his home. Mr. Christie, who was at the time bed fast, informed the agent that he wished to leave Mrs. Christie a part of his life insurance and designated that one of the $5,000 policies be made payable to her in the sum of $60.00 per month until the principal and interest were exhausted; on return with a change of beneficiary form properly filled in, the agent says: "I went to Mr. Christie's room by myself and asked him if he wished Mrs. Christie to pay the funeral expenses out of this first policy which he had left by the month." Christie, according to the agent, indicated that

he did not, and requested that the second $5,000 policy be changed in order that the wife might have $2,000 cash out of it for certain enumerated expenses. After the preparation of a form, similar to the first, in reference to the last mentioned policy, Mr. Matheny returned, and the insured executed both forms, in the presence of the latter, who witnessed the same.

The following morning, and before the papers had been mailed, Mr. Matheny was called and asked not to forward same to the company, that Mr. Christie was not quite satisfied with the changes.

On August 26th, the agent was called again to the insured's home, and on arrival was told that the latter was very ill and could not be seen. Mrs. Christie, however, told him what adjustments Mr. Christie wanted, and the agent returned to his office and prepared, and delivered to the wife that same day, the following paper:

"I hereby authorize W. V. Matheny Agent for the New York Life Insurance Company to request the New York Life Insurance Company to prepare a trust agreement in connection with Policies, #6 799 655-66, #6 810 505 which represents $25,000 insurance, and have the trust agreement read as follows, Pay to Rea B. Christie, my wife, $7,000.00, in cash and to pay to my son Robert Christie and my wife Rea B. Christie $50.00 per month each until Sept. 1st, 1936, and from Sep. 1st, 1936 until Sep. 1st, 1940, $75.00 each, and after Sept. 1st, 1940 to pay $50.00 per month each until the principal and interest are exhausted. It is my desire that my insurance be paid in this manner and that a previous trust agreement be cancelled.
Dated at Clarksburg, W. Va.
26 day of Aug. 1932.
(Signed) Everett M. Christie.
(Signed) Mae Burton
Witness."

The foregoing was returned to the agent's office on the 27th and forwarded to the state office at Wheeling in that day's mail. The insured died on the 28th.

The New York Life Insurance Company admits liability under the policies, and asks that the beneficiary or beneficiaries be determined. Mrs. Christie, in her answers, took the positions (1) that the last-mentioned paper amounted to a change of beneficiary, entitling her to be paid in accordance therewith, or, (2) in case the former was not tenable, that she was entitled to collect the amounts indicated on the change of beneficiary forms executed on August 17th. The son, by guardian *ad litem*, appeared, asserting that the original trust of September 4, 1931, was still in full force and effect.

The trial court held that the paper executed on August 26th authorized Matheny to request the preparation of a trust agreement to take the place of the trust agreement of 1931; that it does not itself constitute a trust agreement; and that it did not accomplish a change of beneficiary of said policies; and, further, that the purported changes of August 17th, never became operative, thus leaving the original trust agreement of 1931 in full force and effect.

Is the paper of August 26th a mere request to have a paper prepared, which, if satisfactory, would be signed upon receipt by the insured, thereby replacing the former trust agreement? The first sentence, standing alone, will bear such construction. But does not this ignore the second sentence? "It is my desire that my insurance be paid in this manner and that a previous trust agreement be cancelled." This purports to speak *in praesenti*. In other words, it would have the payments referred to in the first sentence made as of the date of its execution, notwithstanding the request for the preparation and presentation by the company of a formal trust agreement for insured's acceptance or rejection.

While there is no testimony that the insured signed the paper with knowledge of impending death, we believe that such may be reasonably inferred from the evidence heretofore referred to. He knew what he wanted done with his insurance money, and the paper clearly shows to whom he wanted it to go. He was apparently thinking of it in the present, and not in the future. Therefore,

whether the instrument indicated the preparation of a new trust or not has no bearing here. If the insurance company wanted to prepare a paper embodying such a trust to be signed later, all well and good. That insured wanted his wife protected is evident from the directions given the agent on August 17th. In our opinion the paper operates as a change of beneficiary.

The decree of the circuit court of Harrison county is therefore reversed, and the cause remanded with directions to enter a decree in accordance with this opinion.

*Reversed; remanded with directions.*